PATRICK LOONEY,     :
   Looney,     :
          :
v.         :   CIVIL ACTION NO.
          :   3:10-cv-1068 (VLB)
TOWN OF MARLBOROUGH ET AL., :
   Defendants.   :   July 30, 2011

## MEMORANDUM OF DECISION GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT [Doc. #28] AND DENYING DEFENDANTS' MOTION TO DISMISS [Doc. #19]

The plaintiff, Patrick Looney ("Looney") brings this action for damages against the Town of Marlborough (the "Town"), First Selectman of the Town, William Black ("Black"), in his official and individual capacities, Second Selectman of the Town, Joseph A. La Bella ("La Bella"), in his official and individual capacities, and Third Selectman of the Town, Riva R. Clark ("Clark"), in his official and individual capacities (collectively, the "Defendants").

Looney alleges a claim for breach of contract (Count One) and violation of Connecticut General Statutes § 31-51q (Count Three) against the Town. Looney also alleges a 42 U.S.C. § 1983 claim for violation of his due process rights under the Fourteenth Amendment against Black (Count Two), and a 42 U.S.C. § 1983 claim for violation of his First Amendment rights against Black, La Bella, and Clark (Count Four).

Currently pending before the Court is the Defendants' motion to dismiss Counts Two and Four of Looney's complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure. [Doc. #19]. Also pending is Looney's motion to amend his complaint to add factual allegations clarifying the basis for his claims against La Bella and Clark. [Doc. #28]. For the reasons stated below, Looney's motion to amend is GRANTED, and the Defendants' motion to dismiss is DENIED.

## I. BACKGROUND

Looney was employed as a Building Official for the town of Marlborough, a municipality and political subdivision of the State of Connecticut. Second Am. Compl. [Doc. #29-1] ¶¶ 1-2. He was first appointed to the position on August 15, 1994. *Id.* ¶ 6. Looney accepted the position with pension and benefits in July of 1994 after meeting with the First Selectman of the town of Marlborough. *Id.* ¶ 8. During the meeting, the First Selectman described the position as a full-time salaried position, whereby Looney would work thirty-six hours per week. *Id.*

By statute, the Building Official "pass[es] upon any question relative to the mode, manner of construction or materials to be used in the erection or alteration of buildings or structures, pursuant to the applicable provisions of the State Building Code" and Department of Public safety regulations, and "require[s] compliance with the provisions of the State Building Code . . . relating to the construction, alteration, repair, removal, demolition and integral equipment and location, use, accessibility, occupancy and maintenance of buildings and structures, except as may be otherwise provided for." Conn. Gen. Stat. § 29-261(b). In addition, according to Looney, his responsibilities as a Building Official included "plan[ning], organiz[ing], and implement[ing] a comprehensive building advisory, inspection and enforcement program," "provid[ing]

consultation to boards and commissions," "assist[ing] the Sanitarian by performing subsurface septic system inspections on an as needed basis," and "assist[ing] all departments and employees in trouble-shooting computer problems and assisting staff in computer skill development." Second Am. Compl. [Doc. #29-1] ¶ 20. Looney claims that he performed his duties "with distinction" throughout his employment as Building Official. *Id.* ¶ 21.

In order to align Looney's appointment with the election cycle of the Board of Selectmen, Looney was reappointed to the position of Building Official on November 29, 1995 under the same terms and conditions as his initial appointment. *Id.* ¶ 9. Pursuant to Connecticut General Statutes § 29-260(a), a Building Official is appointed to a term of four years and until his successor qualifies. *Id.* ¶ 12. According to section 3.8.1.1 of the Marlborough Town Charter, the First Selectman requires the approval of the Board of Selectmen to discharge or remove all appointed officials or employees of the Town. *Id.* ¶ 14. Looney was reappointed as a full-time Building Official with pension and benefits on November 23, 1999, in accordance with Section 29-260(a). *Id.* ¶ 15.

On February 4, 2004, Looney was notified that he had again been reappointed as a full-time Building Official with pension and benefits. *Id.* ¶ 16. Looney alleges that at this time the Town's First Selectman inappropriately attempted to shorten the term of reappointment for the position, stating that his term would expire on July 31, 2006 rather than November 22, 2007, the end of the four-year cycle. *Id.* ¶ 16. However, in April 2006, Looney was given notice of his

reappointment as a full-time Building Official with pension and benefits for an additional four years effective August 2006. *Id.* ¶ 17.

Around October 8, 2009, Looney filed a grievance claiming that his supervisor, Peter Hughes ("Hughes"), Planning and Development Director for the Town, had violated his First Amendment rights by attempting to limit his communication of information to a Town resident regarding the issue of wood-burning boilers/stoves and smoke discharge being public health concerns subject to regulation. *Id.* ¶ 23. On October 30, 2009, Hughes denied the grievance, stating that "Mr. Looney has been requested to restrict his actions in the office to that of his duties and not to make determinations or engage in discussions of substantive matters outside his job duties concerning other Town agencies or jurisdictions." *Id.* ¶ 24. On November 25, 2009, Looney addressed a memorandum to First Selectman Black in which he continued to protest the limits on his speech concerning wood-burning stoves. *Id.* ¶ 25. Specifically, he complained that he was being prevented from "voicing his opinion regarding an outside agency enforcing a cease and desist order against Town residents." *Id.* Looney's grievance did not proceed beyond the second step, and he hired counsel to communicate with the Town. *Id.* ¶ 26. Looney's counsel, in turn, communicated to Black through a letter advising the Town that the restriction placed on Looney by Hughes was an illegal prior restraint on speech in violation of the First Amendment. *Id.* ¶ 26. On December 30, 2009, counsel for the Town stated that the Town would not remove the restrictions on Looney's speech and threatened disciplinary action up through and including discharge. *Id.* ¶ 27.

On January 4, 2010, counsel for the Town informed AFSCME Council 4, the union for Town employees (the "Union"), that individuals in the Local 1303-433 unit would be laid off or have their hours reduced, including the position of Building Official which would be cut to twenty hours per week. *Id.* ¶ 28. On January 28, 2010, Black sent a letter to Looney confirming that his hours would be cut to twenty per week. *Id.* ¶ 29. Looney alleges that Black did not obtain the approval of the Board of Selectmen in an official meeting to take this action. *Id.* ¶ 30. As a result of having his hours cut, Looney was removed from the bargaining unit and lost his pension and benefit entitlements. *Id.* ¶¶ 31-32.

On April 5, 2010, Looney notified the Town that he intended to bring an action to vindicate his rights. *Id.* ¶ 34. On June 14, 2010, he filed a lawsuit against the Town and Black in Connecticut Superior Court. *Id.* ¶ 34. Looney alleges that after he commenced the lawsuit, Black posted a notice to fill the position of Building Official on or before August 1, 2010, which is when Looney's term was set to expire. *Id.* ¶ 35. Black appointed the Second and Third Selectmen (La Bella and Clark) as members of a "search committee" to interview candidates for that position along with that of Fire Marshall. *Id.* ¶ 36. Looney claims that the Town had never before engaged in a search and interview process to select a Building Official. *Id.* ¶ 37. Looney applied for the position and was interviewed, but on July 30, 2010, the Board of Selectmen appointed another candidate. *Id.* ¶ 38. Looney alleges that La Bella brought up the subject of the lawsuit during his interview. *Id.* ¶ 39. Looney also alleges that, at a special

meeting of the Board of Selectman, Clark stated, "Frankly, I have serious issues recommending someone who is suing the Town." *Id.* ¶ 40.

The Defendants removed Looney's case against the Town and Black to this Court on July 8, 2008. [Doc. #1]. On August 3, 2010, Looney filed an amended complaint as a matter of course adding La Bella and Clark as defendants. [Doc. #12]. The Defendants filed their motion to dismiss on September 30, 2010. [Doc. #19]. Looney filed his opposition to the Defendants' motion and his motion for leave to file a second amended complaint on November 4, 2010. [Doc. ##27, 28].

## II. STANDARD OF REVIEW

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949-50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks omitted).

### III. DISCUSSION

### A. MOTION TO AMEND COMPLAINT

As an initial matter, Looney moves to amend his complaint in order to allege specific facts against La Bella and Clark in response to the Defendants' argument that La Bella and Clark were not personally involved in the violation of Looney's First Amendment rights, which is necessary to support a claim for damages against a defendant in his individual capacity. [Doc. #28].

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint after a responsive pleading has been filed should be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a). Courts should grant applications to amend unless there is good reason to deny the motion such as "futility, bad faith, undue delay, or undue prejudice to the opposing party." *Min*

*Jin v. Metro Life Ins. Co.*, 310 F.3d 184, 101 (2d Cir. 2002). The Defendants object to Looney's motion to amend solely on the basis of futility. They argue that the proposed amendments are futile because the Defendants are each entitled to qualified immunity with respect to the First Amendment claims against them in their individual capacities because Looney did not engage in protected speech and, even if he did engage in protected speech, the law is not clearly established in the context of this case.

However, as discussed more fully below, the Court holds that Looney has properly alleged that he engaged in activity protected by the First Amendment by speaking on a matter of public concern, and that the law in this area is sufficiently clearly established that a reasonable official in the position of the Defendants would have known that their conduct violated Looney's rights. Furthermore, the allegations added to the second amended complaint clarify the personal involvement of La Bella and Clark in the purported violation of Looney's First Amendment rights. Therefore, the proposed amendments are not futile, and the Court grants Looney's motion to amend his complaint.

### B. MOTION TO DISMISS

#### 1. Personal Involvement of La Bella and Clark

The Defendants move to dismiss the claims against La Bella and Clark in their individual capacities on the basis that Looney has failed to allege that they were personally involved in the deprivation of his First Amendment rights. In order to establish individual liability under Section 1983, a plaintiff must show "(a) that the defendant is a 'person' acting 'under color of state law,' and (b) that

the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004).  In addition, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Id.; see also Iqbal*, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution)."  In a retaliation case, personal involvement requires "direct participation," meaning "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005) (analyzing personal involvement of defendant in the context of the causation requirement of a retaliation claim).

In this case, Looney has pleaded sufficient facts to demonstrate that La Bella and Clark personally caused him to be deprived of a federal right.  In his second amended complaint, Looney alleges that La Bella and Clark were appointed as members of a search committee to interview candidates to fill the position of Building Official when Looney's term ended in August 2010.  He further alleges that he reapplied for the job, and that during the interview process La Bella and Clark made certain statements which evidenced their intent to retaliate against him for filing a lawsuit against the Town seeking to redress violations of his First Amendment rights.  Specifically, Looney claims that during his interview La Bella asked him about the lawsuit he was bringing against the Town, and that at a meeting for the Board of Selectman, Clark stated, "Frankly, I

have serious issues recommending someone who is suing the Town."  Second Am. Compl. [Doc. #29-1] ¶¶ 39-40.  These allegations are sufficient to demonstrate La Bella and Clark's personal involvement in refusing to rehire Looney for the Building Official position, which can support a claim for First Amendment retaliation.  *See Liebowitz v. Cornell Univ.*, 584 F.3d 487, 500-01 (2d Cir. 2009) (holding that refusal to rehire or failure to renew employment contract constitutes an adverse employment action).

However, Looney cannot base his First Amendment claims against La Bella and Clark upon the reduction in his hours that caused him to lose salary and benefits.  There are no allegations in the second amended complaint which suggest that La Bella and Clark were involved in the decision to reduce his hours.  Therefore, Looney's claims for First Amendment retaliation against La Bella and Clark are limited only to the refusal to rehire him for the Building Official position in August 2010.

### 2. Qualified Immunity

The Defendants next argue that they are entitled to qualified immunity with respect to Looney's constitutional claims against them in their individual capacities.  The doctrine of qualified immunity shields government officials performing a discretionary function "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzerald*, 457 U.S. 800, 818 (1982).  The Court must engage in a two-part inquiry to determine an official's entitlement to governmental immunity:  whether the facts shown "make

out a violation of a constitutional right," and "whether the right was clearly established at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009). Courts are permitted to exercise their discretion in determining which of the two prongs should be addressed first. *Id.*

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A right is clearly established if (1) it has been defined with reasonable clarity; (2) it has been recognized by the Supreme Court or the Second Circuit; and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful. *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998).

### a. Due Process

The Court will first address Looney's due process claim against Black. Looney alleges that Black violated his right to due process by reducing his hours from full-time to part-time in January 2010, resulting in a reduction in pay and the loss of benefits. The threshold inquiry in analyzing a procedural due process claim is whether the plaintiff has a property or liberty interest protected by the Constitution. *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). If a protected interest is identified, the Court must consider whether the government deprived the plaintiff of that interest without due process. *Narumanchi v. Board of Trustees of Connecticut State University*, 850 F.2d 70, 72 (2d Cir. 1988). The Court is then required to determine what process was due and whether the

constitutional minimum was provided by the government. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

Property interests are not created by the Constitution; instead, "they are created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlements to those benefits." *Roth*, 406 U.S. at 577. In order to for a plaintiff to have a property interest in a particular benefit, he must have a "legitimate claim of entitlement to it." *Id.* A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent "just cause" for discharge. *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). While state law determines whether a public employee has a property interest in continued employment, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Id.* (quoting *Ezekwo v. NYC Health & Hosps. Corp.*, 940 F.2d 775, 782 (2d Cir. 1991)). In determining whether a particular property interest rises to a level warranting constitutional protection, "a court must look to whether the interest involved would be protected under state law and must weigh the importance to the holder of the right." *Ezekwo*, 940 F.2d at 783 (citation and internal quotation marks omitted).

In this case, it is undisputed that Looney had a property interest in continued employment as Building Official until the expiration of his four-year term in August 2010. That interest is derived from Section 29-260 of the

Connecticut General Statutes. Section 29-260 provides that the chief executive officer of any town "shall appoint an officer [known as the building official] to administer the code for a term of four years and until his successor qualifies and quadrennially thereafter shall so appoint a successor." Conn. Gen. Stat. § 29-260(a). Section 29-260 further provides that a local Building Official "who fails to perform the duties of his office" may be dismissed, provided that he is first given notice in writing of the specific grounds for his dismissal and an opportunity to be heard in his own defense at a public hearing. *Id.* § 29-260(b)(c).

The Defendants argue, however, that Section 29-260 specifically governs only the dismissal of a Building Official, and does not impose any procedural requirements that must be followed before reducing a Building Official's hours from full-time to part-time. Therefore, according to the Defendants, Section 29-260 cannot serve as the source of Looney's property interest in a full-time position with benefits.

Looney argues, on the other hand, that he had property interest in full-time employment with benefits during his terms as Building Official because prior to each of his appointments, the First Selectman offered the position to him as a full-time position with pension and benefits. Therefore, Looney claims, upon his acceptance of each appointment, he entered into an enforceable employment agreement with the Town for a full-time position. In addition, as a full-time employee he became a member of the Union and was subject to the terms of a collective bargaining agreement (the "CBA") between the Town and the Union. Looney also references the terms of an employee handbook, which provides that

any employee who works in a classified position for thirty or more hours per week is considered a full-time employee and is entitled to benefits.  *See* Def. Exh. C [Doc. #39-3], Sec. 1.1.C.

While neither the Supreme Court nor the Second Circuit has specifically confronted the issue of whether due process protections extend to a reduction in hours from full-time to part-time, there are several cases in which the Second Circuit has held an employee's constitutionally protected property interest to be implicated by adverse employment actions short of termination.  For instance, the Second Circuit has recognized an employee's property interest in a particular position or rank where demotion from that rank would result in lower pay and benefits.  *See Ciambrello v. County of Nassau*, 292 F.3d 307, 317-18 (2d Cir. 2002). The Second Circuit has also recognized a property interest in an employee's suspension without pay, *see O'Connor v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005), and the right to be rehired.  *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 212 (2d Cir. 2003).

None of these three cases is directly on point.  In both *Ciambrello* and *Harhay*, a specific contractual provision contained in a collective bargaining agreement was the source of the plaintiff's property interest.  In *Ciambrello*, the applicable agreement prohibited employees from being subjected to disciplinary penalties, including demotion, absent incompetence or misconduct.  292 F.3d at 316.  Similarly, in *Harhay*, the applicable agreement gave the plaintiff a contractual right to be reappointed to any vacant position for which she was qualified.  323 F.3d at 212.  Here, although the CBA contains a provision

prohibiting the Town from disciplining employees absent just cause and requiring specific procedures to be followed in effecting disciplinary measures, Looney expressly states that he is not relying on the CBA as the source of his property interest. *See* Pl. Sur-reply [Doc. #40] at 5 ("The deprivation of Plaintiff's statutory powers . . . arises as a property interest protected by Connecticut Statute, not the CBA."). Furthermore, the CBA gives the Town the authority to lay off employees or reduce hours if necessary, to take effect in inverse order of seniority in the affected job title. *See* Def. Exh. D [Doc. #39-4], Article 23, Section 23.1. *O'Connor* is also inapposite because the plaintiff in that case was placed on unpaid sick leave, which the Second Circuit considered to be the equivalent of suspension without pay, and thus he was barred from working entirely during the pendency of his leave. 426 F.3d at 197.

Instead, this case is most analogous to *Ezekwo v. New York City Health and Hospitals Corporation*, a case in which the Second Circuit held that a medical doctor's expectation of serving as chief resident "rose to the level of a property interest" even though neither her written contract nor the residents' collective bargaining agreement mentioned any formal right to the chief residency. 940 F.2d at 782-83. The Second Circuit began by noting that contractual provisions may be "implied" into a contract as a result of a course of dealing between the parties. *Id*. at 782. The Second Circuit then found that the hospital's established practice of awarding the chief residency to all third year residents on a rotating basis, the hospital's assurance that the plaintiff would become chief resident, and the plaintiff's reasonable reliance on this course of conduct "created a

contractual right that rose to the level of a significant property interest that would be protected under state law." *Id.* at 783. Next, the Second Circuit found that, because the chief residency "denotes the culmination of years of study" and "is necessary [sic] a position that an individual can occupy only once in his or her career," the interest at stake "was of significant professional value." *Id.*

Like in *Ezekwo*, Looney's purported agreement with the Town for full-time employment with pension and benefits was not memorialized in a written contract. However, Looney alleges a consistent course of conduct over a period of more than fifteen years pursuant to which the Town appointed him to successive four-year terms as Building Official in a full-time capacity with pension and benefits. While Looney's interest in working as Building Official full-time may perhaps have been of lesser value than Ezekwo's once-in-a-lifetime opportunity to become a chief resident, it was nonetheless very important to him because he worked in a full-time capacity with pension and benefits for over fifteen years and relied upon those benefits to secure medical coverage for himself and his disabled spouse. *See Ciambriello*, 292 F.3d at 318 (holding that plaintiff's interest in position that entailed higher pay and benefits than his previous position was sufficiently important to warrant constitutional protection). Accordingly, the Court concludes that Looney sufficiently alleges a legitimate expectation that he would continue as Building Official in a full-time capacity with benefits at least until the expiration of his four-year term in August 2010, and that this interest was sufficiently important to rise to the level of a constitutionally protected property interest.

In light of *Ewekwo*, the Court also concludes that the law was defined with reasonable clarity and that, based upon the allegations of the second amended complaint, Black's conduct in reducing Looney's hours was not objectively reasonable. Therefore, Black is not entitled to qualified immunity at this stage of the litigation. *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010), the case cited by the Defendants in support of their argument that Black's conduct was objectively reasonable, is distinguishable from the case at bar. In *Taravella*, the Second Circuit held that the town mayor acted objectively reasonably when he terminated a town employee without a hearing where her employment agreement was ambiguous as to whether she could be terminated without cause and the mayor read the agreement and sought legal advice prior to the termination. 599 F.3d at 135. This case does not involve an ambiguous employment agreement. Instead, Looney alleges a consistent course of conduct over a period of more than fifteen years in which the Town appointed him to four successive terms as Building Official in a full-time capacity with pension and benefits. Then, shortly after being warned to refrain from speaking to Town residents about the wood-burning stove issue, Looney's hours were suddenly reduced to part-time, causing him to lose his pension and benefits and be removed from the bargaining unit. Furthermore, unlike in *Taravella*, there is no indication that Black sought legal advice before reducing Looney's hours, although it is noted that the Town's counsel informed the Union of the planned reductions.

Having concluded that Looney possessed a property interest in full-time employment, the Court must next determine what process he was due before being deprived of that interest. An employee who possesses a property right in continued employment must be afforded a pre-termination opportunity to respond to the charges against him coupled with a post-termination administrative procedure. *See Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 547-48 (1985). Where the adverse employment action is something short of termination, however, a pre-deprivation hearing is not always required. *See Ciambriello*, 292 F.3d at 319. In determining whether a pre-deprivation hearing was constitutionally required under the circumstances of this case, the Court must balance the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of any additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 319-20.

With regard to the first factor, Looney had a substantial interest in maintaining full-time hours. The reduction in his hours to part-time resulted in a reduction in pay and loss of benefits as well as his removal from the bargaining unit. *See id.* at 320 (plaintiff's interest in maintaining employment at particular rank was high because his demotion resulted in a reduction in salary and benefits). Second, the risk of erroneous deprivation through the procedures used was high. Looney alleges that his hours were reduced after he engaged in

18

speech protected by the First Amendment, and that no process was afforded to him before this action was taken. Third, it would not have been particularly burdensome to provide Looney with a pre-deprivation hearing before reducing his hours. *See id.* (finding that the "fiscal and administrative burdens associated with a pre-demotion hearing would be minimal, as such a hearing need not be elaborate") (citation and internal quotation marks omitted). Accordingly, on balance the factors identified by the Second Circuit in *Ciambriello* weigh in favor of affording Looney a pre-deprivation hearing prior to his hours being reduced. Since Looney alleges that no such hearing was provided, he states a claim for violation of his due process rights.

The Defendants argue that there was no due process violation because Looney could have availed himself of the grievance procedure outlined in the CBA, which permitted Union members or the Union to file grievances if they believed that a specific provision of the CBA had been violated. *See* Def. Exh. D [Doc. #39-4], Article 25. According to the Defendants, Looney would have been entitled to take his grievance through Step Two of the process, which would have resulted in an appeal to the First Selectman. However, Looney alleges that because of the reduction in his hours to part-time, he was removed from the bargaining unit. Second Am. Compl. ¶ 31. If Looney was no longer a member of the Union, it is not clear that he could have availed himself of the grievance procedure to contest the reduction of his hours. Therefore, resolution of this issue is properly reserved for the summary judgment stage on a fully developed

factual record.  The Defendants' motion to dismiss the due process claim against Black on the basis of qualified immunity is denied.

### b. First Amendment Retaliation

Next, Looney asserts a First Amendment retaliation claim against Black, La Bella and Clark.  Looney alleges that Black retaliated against him by reducing his hours from full-time to part-time because he had discussed the appropriateness of a state agency's regulation of wood-burning stoves with a Town resident who had received a cease-and-desist order.  He further alleges that La Bella and Clark retaliated against him by refusing to rehire him for the Building Official position.

The Supreme Court has made clear that public employees do not surrender all of their First Amendment rights by reason of their employment. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).  Instead, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern.  *Id.*  Whether public employee speech is protected from retaliation under the First Amendment entails two inquiries.  The first is "whether the employee spoke as a citizen on a matter of public concern." *Id.*  If the answer is no, the speech is not entitled to First Amendment protection. *Id.*  If the answer is yes, then it must next be determined "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public."  *Id.*  This entails balancing "the interests of the [employee], as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the

efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 569 (1968). In *Garcetti*, the Supreme Court held that public employees are not speaking as citizens for First Amendment purposes when they make statements "pursuant to their official duties." 547 U.S. at 421.

The Defendants appear to concede that Looney spoke as a citizen instead of pursuant to his official duties. They argue, however, that Black, La Bella and Clark are entitled to qualified immunity because Looney's speech did not address a matter of public concern. Speech that addresses a matter of public concern involves statements that can "fairly be characterized as relating to any matter of political, social, or other concern to the community[.]" *Connick v. Myers*, 461 U.S. 138, 146 (1983). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999). In reaching this decision, the Court must examine the motive of the speaker "to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Id.* at 163-64. Whether an employee expresses his views "inside his office, rather than publicly, is not dispositive," because in some cases employees "may receive First Amendment protection for expressions made at work." *Garcetti*, 547 U.S. at 420. In addition, whether an employee's speech concerns the subject matter of his job is also not dispositive, because the First Amendment "protects some expressions related to the speaker's job" in certain contexts. *Id.* at 421.

Examples of the types of speech that may be qualify as speech on a matter of public concern include making a public statement, discussing politics with a co-worker, and writing a letter to a local newspaper. *See id.* at 423-24. For example, in *Pickering*, the Supreme Court held that a teacher who wrote a letter to a local newspaper in connection with a proposed tax increase that was critical of the manner in which the Board and district superintendent of schools had handled past proposals to raise new revenue for the schools was entitled to First Amendment protection as a citizen speaking on a matter of public concern. 391 U.S. at 574-75. In another case, the Supreme Court held that a clerical deputy spoke as a citizen on a matter of public concern when, after hearing about an assassination attempt on the President, she stated to a coworker that she believed the attempt to have been motivated by the President's policies regarding welfare and that she "hope[d] they get him" the next time. *Rankin v. McPherson*, 483 U.S. 378, 386-87 (1987). The Supreme Court reasoned that the statement was made in the course of a conversation addressing the policies of the President's administration, and on the heels of a news bulletin regarding a matter of heightened public attention. *Id.*

The Court holds that Looney's complaint asserts sufficient facts to establish that his speech qualifies as speech on a matter of public concern. Looney alleges that, during a conversation with a Town resident, he voiced his opinion regarding the authority of a state agency to issue cease-and-desist orders against Town residents who used wood-burning stoves. While this issue may seem trivial in comparison to matters such as, for example, an assassination

attempt on the President, it nonetheless involves speech that is fairly characterized as political in nature. In essence, Looney was discussing the proper scope of the state's authority to regulate the conduct of Town residents on their own property. There are several cases holding that criticism of a government agency or government officials for exceeding their authority constitutes speech on a matter of public concern. *See, e.g.*; *Lindsey v. City of Orrick*, 491 F.3d 892, 899 (8th Cir. 2007) (city public works director's speech "criticizing the Council's practices surrounding the passage of ordinances and its apparent lack of sunshine law compliance [was] clearly a matter of public concern"); *Caraccilo v. Village of Seneca Falls, N.Y.*, 582 F. Supp. 2d 390, 409 (W.D.N.Y. 2008) (finding plaintiff's speech to address matters of public concern where she "spoke out about acts taken by defendants that she believed exceeded their authority under state and Village law"); *Casey v. West Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1331 (10th Cir. 2007) ("As we have held many times, speech reporting the illicit or improper activities of a governmental entity or its agents is obviously a matter of great public import"); *see also Harman v. City of New York*, 140 F.3d 111, 118 (2d Cir. 1998) ("discussion regarding current government policies and activities is perhaps the paradigmatic matter of public concern"). The wood-burning stove issue appears to have been the subject of public debate and a matter of some importance to Town residents. Further, the Defendants do not argue that Looney made his statements regarding state regulation of wood-burning stoves pursuant to his official job duties.

Having found that Looney's complaint adequately asserts that he spoke on a matter of public concern and since the Defendants concede that he spoke in his capacity as a citizen, the Court must next balance Looney's interests "as a citizen, in commenting on matter of public concern and the interest of the [Town], as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 569. In this case, the Court finds this interest to weigh in favor of Looney. The Defendants do not explain how Looney's speech interfered with the efficient operation of the Town. The Defendants do not claim that Looney's speech served to undermine any Town policies or initiatives or interfere with its relationships with state officials. Indeed, Looney was not criticizing action by a Town agency or employee; instead, he was criticizing the conduct of an outside state agency. The Defendants do not argue that Looney's speech impacted or reflected upon his ability to perform the functions of his job as Building Official, and Looney alleges that he performed his job duties "with distinction" throughout his employment. The Town's request for Looney to restrict his speech to matters within his professional purview seems to suggest the Town's interest is in assigning responsibilities and organizing its functions. However, the Defendants do not explain the practical implication or effects of Looney's speech on its interests. Therefore, based upon the information available at this stage, the Town appears to have had a weak interest in prohibiting Looney's speech on the wood-burning stove issue that does not outweigh Looney's right to comment on a matter of public concern.

The Defendants' attempt to analogize this case to *Faghri v. University of Connecticut*, 621 F.3d 92, 98-99 (2d Cir. 2010) is unavailing.  In *Faghri*, the Second Circuit granted qualified immunity to the individual defendants responsible for demoting the plaintiff from his deanship at the University for directly opposing University policies and in so doing undermined their initiative.  The Second Circuit stated:

> The interests of an employer may be particularly weighty if the employee in question holds an executive or policymaking position. The balance shifts in this matter because "the expressive activities of a highly placed supervisory, confidential, policymaking, or advisory employee will be more disruptive to the operation of the workplace than similar activity by a law employee."

*Id.* (quoting *McEvoy v. Spencer*, 124 F.3d 92, 103 (2d Cir. 1997)).  This case is distinguishable from *Faghri* for two reasons.

First, the plaintiff in *Faghri* was publicly expressing his opposition to the policies of his own employer, the University.  Looney, by contrast, did not express his opposition to Town policies or actions.  Instead, Looney alleges that he expressed his view that an outside state agency lacked the authority to issue cease-and-desist orders to Town residents for their use of wood-burning stoves.  Based upon Looney's allegations, there is no indication that Looney's speech criticizing a state agency had any potential to disrupt the activities of the Town or undermine the Town's policies or initiatives.

Second, the Second Circuit in *Faghri* was careful to note that the reasoning for its decision depended upon the fact that the plaintiff was removed from a management position.  *Id.* at 98.  In fact, the Second Circuit stated that its "conclusion might well be different had the University fired Faghri from his

professorship." *Id.* However, as a dean, Faghri occupied a high-ranking executive position within the University, and therefore his criticism of University policies had the potential to be highly disruptive to the University's operations. *Id.* As a result, the University had a "particularly weighty" interest that outweighed Faghri's right to remain as dean while voicing his opposition to University policies. *Id.* In this case, it does not appear based upon the description of a Building Official's duties outlined above that Looney was a "highly placed supervisory, confidential, policymaking, or advisory employee." *Id.* Therefore, the Town's interest in limiting his speech was not nearly as strong as the University's interest in *Faghri*. Furthermore, unlike the plaintiff in *Faghri*, Looney was not merely removed from a management position. Instead, he alleges that the Defendants retaliated against him by first reducing his hours to part-time, and then by refusing to reappoint him to the Building Official position, thus ending his employment with the Town altogether.

Finally, the Defendants argue that Looney's First Amendment claims are barred by the Supreme Court's decision in *Borough of Duryea, Pa. v. Guarnieri*, 131 S.Ct. 2488 (2011). In that case, the Supreme Court held that a government employee cannot assert a retaliation claim under the Petition Clause of the First Amendment unless the underlying issue on which he petitions the government is a matter of public concern. *Id.* at 2500-01. Here, Looney alleges that he commenced a lawsuit against the Town in June 2010 to vindicate his First Amendment rights after his hours were reduced by Black in retaliation for his protected speech. Thereafter, he reapplied for the Building Official position when

the Town posted a notice for a vacancy beginning in August 2010. During the interview process, both La Bella and Clark expressed their reservations in reappointing Looney because he had brought a lawsuit against the Town. Thus, although Looney contends that all of his First Amendment claims fall under the Speech Clause, it does appear that his claims against La Bella and Clark specifically are more properly characterized as Petition Clause claims. Nevertheless, *Guarnieri* does not require dismissal of these claims. The Supreme Court made clear in *Guarnieri* that the framework used to govern Speech Clause claims applies to Petition Clause claims as well. The Supreme Court explained:

> When a public employee petitions as a citizen on a matter of public concern, the employee's First Amendment interest must be balanced against the countervailing interest of the government in the effective and efficient management of its internal affairs. If that balance favors the public employee, the employee's First Amendment claim will be sustained.

*Id.* at 2500. In this case, as discussed previously, the underlying issue on which Looney petitioned the government did involve a matter of public concern. Looney complains that the Town retaliated against him after he expressed his view that an outside state agency lacked the authority to issue cease-and-desist orders to Town residents regarding their use of wood-burning stoves, which the Court has found to qualify as a matter of public concern. Further, based upon the facts alleged in the second amended complaint, Looney's First Amendment interest outweighs the Town's interest in the effective and efficient management of its internal affairs because there is no indication that Looney's criticism of a state agency disrupted the Town's activities or undermined the Town's policies or initiatives in any way.

In conclusion, Black, La Bella and Clark are not entitled to qualified immunity with respect to Looney's First Amendment retaliation claims against them in their individual capacities. It is clearly established that a public employee has a First Amendment right to speak and petition the government as a citizen on a matter of public concern. *See Garcetti*, 547 U.S. at 417; *Connick*, 461 U.S. at 147; *Guarnieri*, 131 S.Ct. at 2500. Looney alleges that he spoke as a citizen on a matter of public concern by discussing his view with a Town resident that an outside state agency lacked the authority to issue cease-and-desist orders to town residents regarding their use of wood-burning stoves. Looney claims that Black retaliated against him based upon his protected speech by reducing his hours from full-time to part-time, causing him to lose his pension and benefits. He claims that, after filing a lawsuit to vindicate his First Amendment rights, La Bella and Clark further retaliated against him by refusing to reappoint him to the Building Official position because of his lawsuit. Therefore, the Defendants' motion to dismiss is denied with respect to Looney's First Amendment claims.

## IV. CONCLUSION

Based upon the foregoing reasoning, Looney's motion to amend his complaint [Doc. #29] is GRANTED, and the Defendants' motion to dismiss [Doc. #20] is DENIED. The Court holds that Looney has sufficiently alleged the personal involvement of La Bella and Clark in the events giving rise to his First Amendment claims, and that Black, La Bella and Clark are not entitled to qualified immunity with respect to his due process and First Amendment claims against

them in their individual capacities.  Looney is directed to file his second amended complaint within three days of the date of this decision.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  July 30, 2011.